**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MONTA JEAN TAYLOR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number CIV-05-49-C |
| | ) | |
| WARREN BOBBY MILLER, individually, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is a Motion for Summary Judgment filed by Defendants. Plaintiffs timely filed a response, to which Defendants filed a reply. Accordingly, the motion is ripe for disposition. The Court, upon consideration of the litigants' submissions and the applicable law, now **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is proper only if Defendants, as the moving parties, show "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's function, at the summary judgment stage, is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if, [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of the [Plaintiffs'] position is insufficient to create a dispute of fact that is 'genuine' . . . ."  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).  Defendants, as they do not bear the burden of persuasion at trial, need not negate Plaintiffs' claims, but may point out to the Court Plaintiffs' lack of evidence on an essential element of their claims.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  Plaintiffs will avoid summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential and contested element of the case.  Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248).  When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to Plaintiffs, the nonmoving parties, and draws all reasonable inferences in their favor.  See Anderson, 477 U.S. at 255; Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## BACKGROUND

Defendant Warren Bobby Miller (Officer Miller) is a police officer certified by the Council on Law Enforcement Education and Training (CLEET) with 519 hours of training to his credit.  He is employed by co-Defendant City of Yale, Oklahoma (the City).  The events culminating in this action began in the early morning hours of Sunday, June 29, 2003, when Officer Miller initiated a traffic stop of a pickup within city limits.  Plaintiffs Monta

Jean Taylor (Taylor) and Frank Wayne Hulnick (Hulnick) were passengers in the rear seat of the pickup.  The litigants' stories diverge substantially at this point.

According to Officer Miller, after approaching the pickup he noticed the odor of alcohol emanating from inside the passenger compartment of the pickup.  Officer Miller asked Hulnick to step outside the pickup and then asked if he had been drinking.  Hulnick responded in the affirmative.  Officer Miller then noticed Taylor was in the rear seat and asked her to step out of the pickup.  Taylor said "no."  Officer Miller asked her a second time to step out—again she said no.  Officer Miller asked her a third time and Taylor responded by cursing at him but did eventually step out of the pickup on her own.  Officer Miller states that he could tell she had been drinking and was intoxicated.  Taylor continued her cursing and began to scream at him.  He advised her to turn around as she was under arrest for public intoxication.  Taylor said "no" again, started backing away from him and succeeded in placing a speed limit sign between them.  Officer Miller attempted several times to grab her but was unsuccessful as Taylor dodged about, keeping the street sign between them.  Officer Miller eventually grabbed Taylor's left arm but then saw her right fist swinging toward him.  Officer Miller grabbed her right arm and the two went down to the ground together.  Taylor lay on her stomach and had placed her arms under her body so that Officer Miller could not handcuff her.  During this time, Officer Miller radioed for assistance.

Officer Miller and Taylor struggled on the ground for a short time after which he placed a can of pepper spray to her face and warned her that she would be sprayed if she did not allow herself to be handcuffed.  Taylor complied and Officer Miller proceeded to

handcuff her.  He walked her to his patrol car and asked her to sit down but she said "no" and stiffened her body so that he could not place her into the car.  Officer Miller finally picked her up and partially inserted her into the car.  At this time, Chief of Police for the City of Yale, co-Defendant Rick Gibson (Chief Gibson), also CLEET certified, arrived and began to assist Officer Miller by prying Taylor's hands loose from the seat of the patrol car.  Gibson testified that he smelled alcohol emanating from the rear of the patrol car.  Both officers eventually were able to place Taylor completely into Officer Miller's patrol car and shut the door. Shortly thereafter, Chief Gibson arrested Hulnick for public intoxication on the request of Officer Miller.  During Hulnick's arrest, Chief Gibson smelled alcohol on Hulnick's breath.  Both Officer Miller and Chief Gibson state that they did not use more force than necessary to fulfill their police duties.

According to Plaintiffs, neither Taylor, Hulnick, nor the pickup smelled of alcohol. When Officer Miller approached the pickup, he initially asked the driver if the pickup belonged to Jeannie Taylor and if she was in the pickup.  Upon receiving an affirmative answer to both questions, Officer Miller then ordered the windows to be rolled down and for Hulnick to exit the pickup.  He asked Hulnick if he had been drinking and Hulnick responded in the negative.  Officer Miller asked again and received the same answer.  During their verbal exchange Officer Miller yelled at Hulnick and stated that if Hulnick was lying he would be arrested.

Officer Miller next yelled at Taylor to exit the pickup.  When Taylor did not immediately comment or make an attempt to exit, he reached into the pickup, grabbed her

right arm, and yanked her out of the vehicle.  Upon her forced exit, Officer Miller ordered

her to turn around so he could handcuff her.  She did not comply and instead asked why he

wished to handcuff her.  When she did not receive an answer from Officer Miller she backed

up and held onto a speed limit sign located behind her.  Officer Miller then grabbed her right

wrist and physically took her to the ground, face down, placed his knee in her back, and then

straddled her while he finished handcuffing her with extra-tight locking.  During this time,

Hulnick  pleaded  with  Officer  Miller  to  not  be  so  hard  on  Taylor,  but  Officer  Miller

responded by taking out his pepper spray and threatening to spray Taylor unless Hulnick

backed away.  Taylor insists that she never attempted to strike Officer Miller during their

encounter.

After handcuffing Taylor, Officer Miller grabbed either the back of her hands or the

handcuffs and pulled her upward, placing all of her weight on her wrists, arms, and shoulders

which caused her pain.  Officer Miller then walked her over to his patrol car and slammed

her into the side of the car several times, all the while instructing her to enter the patrol car.

Officer Miller then succeeded in forcing her into the car and on the floorboard by hitting her

in the chest with his fist or the palm of his hand.  Officer Miller entered the patrol car and

lunged on and off of her while attempting to push her completely into the car, stuck his

microphone into her mouth and placed pressure on her throat so as to choke her.  Taylor

insists she never resisted being placed into the patrol car.

At this time, Chief Gibson arrived and helped to lift Taylor from the floor of the car

and onto the seat.  After securing Taylor into the patrol car Officer Miller pointed to Hulnick

and shouted for Chief Gibson to arrest him.  Chief Gibson handcuffed Hulnick and placed him into another patrol car.

Taylor received citations for public intoxication, assault and battery upon a police officer, and resisting arrest.  Hulnick received a citation for public intoxication.  The City chose not to prosecute Plaintiffs and subsequently dismissed all charges.  From the aforementioned events the instant action ensued.

**DISCUSSION**

In their complaint, Plaintiffs allege that Defendants subjected them to treatment in violation of both federal law and state law.  Plaintiffs bring the following claims under 42 U.S.C. § 1983:  excessive force, wrongful arrest, and failure to train.  Taylor also brings a supplemental state law claim for assault and battery.  Defendants argue that summary judgment is proper as they are entitled to qualified immunity; Plaintiffs cannot link a policy or custom to the alleged constitutional violations; Officer Miller and Chief Gibson were properly trained; and Officer Miller's actions were within the scope of employment.

**I.     Plaintiffs' Fourth Amendment Claims for Excessive Force and Wrongful Arrest.**

    **A.     Taylor's Excessive Force Claim Against Officer Miller.**

Taylor alleges that Officer Miller used excessive force in effectuating her warrantless arrest.  Officer Miller contends that he did not use unlawful force for four reasons:  Taylor's injuries were not serious in nature; he did not use handcuffs on Taylor in an inappropriate manner; he did not use pepper spray on Taylor; and that he is entitled to qualified immunity as his actions were objectively reasonable.

Officer Miller's first three arguments are wholly unavailing and may be disposed of with little discussion.  The extent of Taylor's injuries is not determinative and Defendants' "divide and conquer" approach regarding the events which occurred during Taylor's arrest is erroneous.  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001), is instructive on these three arguments:

> [T]he fact that none of the plaintiffs suffered physical injury during the raid [does not] foreclose a finding of excessive force. . . .
>
> Physical injury may be the most obvious injury that flows from the use of excessive force. Yet the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests--a person's "sense of security" and individual dignity. . . . [T]he "'touchstone of the Fourth Amendment is reasonableness,' . . . *measured in objective terms by examining the totality of the circumstances*," . . . . *We likewise decline to adopt a "bright-line" standard dictating that force cannot be "excessive" unless it leaves visible cuts, bruises, abrasions or scars.*

(emphasis added).  Although Officer Miller's first three arguments are unpersuasive, his fourth argument for qualified immunity is deserving of deeper scrutiny.

## 1.    Officer Miller's Defense of Qualified Immunity.

The assertion of a qualified immunity defense shifts the initial burden to Plaintiffs to (1) demonstrate with specificity that Defendants violated a constitutional right that was (2) clearly established at the time of the violation, and that (3) reasonable persons in Defendants' position would know that their conduct violated the asserted constitutional right. Maestas v. Lujan, 351 F.3d 1001, 1006-07 (10th Cir. 2003).  If Plaintiffs fail to shoulder this burden, the Court must grant Defendants qualified immunity; however, if Plaintiffs are

successful, the normal summary judgment burden shifts back to Defendants to show that no genuine issues of material fact remain in dispute to defeat their qualified immunity defense and that they are entitled to judgment as a matter of law. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002). Each step of the qualified immunity analysis is a question of law to be decided by the Court prior to trial. Maestas, 351 F.3d at 1007-08. Nevertheless, if material facts underlying the third step are in genuine dispute, the objective reasonableness determination is for the trier of fact and summary judgment is inappropriate. Olsen, 312 F.3d at 1312-15; Maestas, 351 F.3d at 1007-10; Zuchel v. Spinharney, 890 F.2d 273, 274-76 (10th Cir. 1989).

For the first step of the qualified immunity analysis, the Court analyzes a claim of excessive force in the context of an arrest under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). A constitutional excessive force claim dictates that the Court look to the totality of the circumstances and consider the severity of the crime at issue, whether Taylor posed an immediate threat to Officer Miller or others, and whether Taylor actively attempted to resist arrest or evade arrest by flight. Id. at 396.

Here, the first two Graham criteria certainly weigh in favor of Taylor. The crime for which Officer Miller arrested Taylor was the low-severity misdemeanor of public intoxication. Taylor did not pose an immediate threat to either Officer Miller or the public as she was merely a passenger in her own pickup when Officer Miller forcibly extracted her from it. Furthermore, the evidence presented does not indicate that she possessed a weapon,

and, as the Court must view all evidence in the light most favorable to Taylor and draw all reasonable inferences in her favor, she was not under the influence of alcohol or drugs.

The third Graham criteria, although not as clear, also tilts in Taylor's favor. Taylor claims she did not resist or try to evade arrest. However, it is undisputed that during the course of her arrest she backed away from Officer Miller and placed a traffic sign between them—acts which could reasonably be interpreted by Officer Miller as resisting arrest. In Oklahoma, Taylor may reasonably resist an unlawful arrest, thus her actions may have been warranted. Hayes v. State, 1977 OK CR 220, ¶ 3, 566 P.2d 1174, 1175. Nonetheless, Officer Miller's actions both prior to and subsequent to handcuffing Taylor would certainly qualify as excessive absent any additional efforts by Taylor to further resist or escape arrest. As a result, when the facts alleged by Taylor are taken in the light most favorable to her, the Court finds her allegations regarding Officer Miller's conduct in effectuating her arrest sufficiently state a valid constitutional excessive force claim.

The second step of the qualified immunity analysis requires the Court to determine if the constitutional right to be free from excessive force was clearly established when Officer Miller arrested Taylor. Graham clearly established the general proposition that the Fourth Amendment is violated if objectively unreasonable force is used, but such general propositions which merely delineate a constitutional right are an insufficient basis upon which to deny qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001). The contours of the asserted right at issue must be particularized and sufficiently clear. Id. at 202. Here, the excessive force of which Taylor complains primarily consists of being thrown to

the ground, beaten, choked, and shoved into a hard physical object.  Without a doubt, case law predating Taylor's arrest sufficiently, and with particularity, describes the contours of the right at issue and gives fair warning to any reasonable officer that such physical contacts between an officer and the arrestee, absent resistance or attempt to escape, constitutes excessive use of force.  See Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993); Dixon v. Richer, 922 F.2d 1456, 1462-63 (10th Cir. 1991); Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988).  The Court finds that the constitutional right to be free from excessive force in the manner complained of by Taylor was clearly established at the time of her arrest.

The final step in the qualified immunity analysis requires the Court to determine if a reasonable person in Officer Miller's position would have known that his conduct violated Taylor's constitutional right to be free from excessive force.  Whether Officer Miller acted reasonably under the circumstances is a heavily fact-intensive inquiry.  Olsen, 312 F.3d at 1314.  Here, Taylor claims she was not intoxicated, did not resist arrest, and did not resist being placed into the patrol car, yet Officer Miller subjected her to the above-described actions.  Officer Miller, on the other hand, claims the contrary and that his actions were objectively reasonable under the circumstances.  "[T]he overwhelming number of factual divergences scream the obvious—that material disputed facts obviously remain as to the excessive force claim."  Id. at 1315.  The answer to the qualified immunity analysis hinges upon whose version of the facts is believed; therefore, the entry of summary judgment is precluded.

**B.     Plaintiffs' Wrongful Arrest Claim Against Officer Miller and Chief Gibson.**

Both Taylor and Hulnick allege that Officer Miller and Chief Gibson wrongfully arrested them without probable cause.  Defendants contend that they are entitled to qualified immunity—Officer Miller because probable cause existed to effectuate a warrantless arrest, and Chief Gibson because of the "fellow officer rule."  Defendants further argue that even if they were mistaken as to the existence of probable cause, their mistake was reasonable, thus they are entitled to qualified immunity.

Defendants' motion is devoid of argument pertaining to Plaintiffs' wrongful arrest claim and the first two steps of the qualified immunity analysis.  Defendants apparently concede the first two steps and rightfully so:  The facts as alleged by Plaintiffs specifically show that they were arrested without probable cause, thus violating their constitutional right to be free from unreasonable seizure—a right firmly established prior to their arrest on June 29, 2003.  See Tennessee. v. Garner, 471 U.S. 1, 7 (1985); Beck v. Ohio, 379 U.S. 89, 91 (1964); Olsen, 312 F.3d at 1318.

For a wrongful arrest claim, the third step of qualified immunity analysis—the objective reasonableness prong—requires the Court to analyze the constitutionality of Plaintiffs' warrantless arrests under the probable cause standard.  Olsen, 312 F.3d at 1312. Probable cause exists if, at the moment the arrest was made, "facts and circumstances within the arresting officer's knowledge and of which he . . . has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is

committing an offense." Jones v. City and County of Denver, Colo., 854 F.2d 1206, 1210 (10th Cir. 1988). See also Beck, 379 U.S. at 91. "[C]learly established case law requires officers to look at the 'totality of the circumstances'" in determining the existence of probable cause. Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998). Mere hunches or suspicion, however, cannot form the basis for probable cause. United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citation omitted).

### 1.   Officer Miller, Probable Cause, and Qualified Immunity.

Officer Miller contends that probable cause existed to arrest both Taylor and Hulnick for public intoxication and, additionally for Taylor, failure to obey a lawful order of a police officer, assault upon a police officer, and resisting arrest. Contrary to Officer Miller's arguments, significant factual differences surround each proffered basis for probable cause as shown above. Accordingly, the probable cause determination is one for the trier of fact and the Court is precluded from granting summary judgment based on qualified immunity as genuine issues of material fact remain in dispute. Olsen, 312 F.3d at 1312-13; DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir. 1990).

### 2.   Chief Gibson, the Fellow Officer Rule, and Qualified Immunity

Chief Gibson argues that he is entitled to qualified immunity under the fellow officer rule. The rule allows the Court to determine probable cause by looking at the collective knowledge of all police officers involved, and not just the knowledge of the actual arresting

officer.  Karr v. Smith, 774 F.2d 1029, 1031-32 (10th Cir. 1985).  Generally, the rule is applied in a situation where, prior to the arrest, the officer who made the probable cause determination actually communicates the facts constituting probable cause to the arresting officer.  United States v. Shareef, 100 F.3d 1491, 1503 (10th Cir. 1996).  However, [i]t is well-established that when an order to . . . arrest a suspect is communicated to officers in the field, the underlying facts constituting probable cause . . . need not be communicated . . . ."  Id. at 1503 n.4   A second officer called upon by a fellow officer to effectuate a warrantless arrest may properly presume that the requesting officer has made the necessary probable cause determination.  See Whiteley v. Warden, 401 U.S. 560, 568 (1971) ("[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.").  If the requesting officer's probable cause determination is faulty, the arresting officer is still entitled to qualified immunity if his reliance was objectively reasonable.  Baptiste, 147 F.3d at 1260.

Chief Gibson's status and involvement is quite distinct from those of Officer Miller. The litigants do not dispute that Chief Gibson first entered the scene as Officer Miller attempted to place Taylor into his patrol car; that Chief Gibson's first and only contact with Taylor occurred when he assisted Officer Miller in placing her upright in the patrol car; and that immediately subsequent to securing Taylor in the patrol car, Chief Gibson arrested Hulnick pursuant to Officer Miller's oral, on-site request.  The law does not require Chief Gibson to always make an independent evaluation of probable cause prior to assisting a

requesting officer in effectuating an arrest.  Upon hearing Officer Miller's on-site request to arrest Hulnick, Chief Gibson was entitled to presume that Officer Miller had made the necessary probable cause determination, and was further entitled to rely upon Officer Miller's determination in effectuating Hulnick's arrest.  Shareef, 100 F.3d at 1503 n.4; see Whiteley, 401 U.S. at 568.  Chief Gibson testified that it was within his knowledge that the situation unfolding before him involved alcohol as he smelled the odor on both Taylor and Hulnick.  And no evidence has been presented demonstrating that Chief Gibson should have doubted either Officer Miller, a CLEET certified officer, or his ability to make a probable cause conclusion.  The Court finds that Chief Gibson's reliance upon Officer Miller's probable cause determination was objectively reasonable; therefore, Chief Gibson is entitled to qualified immunity on Hulnick's wrongful arrest claim and summary judgment is appropriate.

For Taylor's wrongful arrest claim against Chief Gibson, the Court need not address the qualified immunity issue.  "[B]y its terms, [§ 1983] applies not only to a person who "subjects," but also to any person who *causes to be subjected . . .* any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004) (quoting 42 U.S.C. § 1983).  Here, the undisputed facts demonstrate that Chief Gibson neither arrested Taylor nor caused her to be subjected to an arrest—Officer Miller formally arrested her, handcuffed her, and was in the process of placing her in his patrol car before Chief Gibson arrived on-scene.  Taylor has not cited any precedential authority, and the Court's research

has not uncovered any authority, holding that an officer who merely assists a fellow officer in placing the arrestee in an upright position inside a patrol car also participated in the arrest and thus may be liable for wrongful arrest.  Taylor has assumed the very fact she has to prove for a wrongful arrest claim—that Chief Gibson either subjected or caused her to be subjected to a wrongful arrest.  The undisputed facts make it patently obvious that Taylor cannot prevail on her wrongful arrest claim against Chief Gibson; accordingly, summary judgment is proper.

## II.     Plaintiffs' Fourth and Fifth Amendment Claim Against the City.

Plaintiffs allege that the City maintained policies or customs which were the moving force behind the violation of Plaintiffs' constitutional rights.  Plaintiffs also argue that the City's training in regard to public intoxication offenses is inadequate.  Defendants argue that Officer Miller and Chief Gibson were adequately trained and that Plaintiffs cannot demonstrate either a direct link between an unconstitutional City policy and Plaintiffs' injuries or that the City was deliberately indifferent to Plaintiffs' rights.

For Plaintiffs' policies and customs argument, they must prove that a City employee committed a constitutional violation and that a City policy or custom was the moving force behind the constitutional violation.  Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  When the Court views all evidence in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor, plaintiffs have demonstrated that a City employee, Officer Miller, committed a constitutional violation.  Nonetheless, the City will not incur liability strictly because its employee committed a constitutional violation.  Id.

As [the United States Supreme Court's] § 1983 municipal liability jurisprudence illustrates, . . . it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).  A municipal policy generally stems from decisions made by the municipal's legislative body or from officials whose acts may fairly be said to represent the municipality.  Id.  A custom generally has not been formally approved by the municipality but is sufficiently widespread within the municipality so as to have the force of law.  Id.  Here, Plaintiffs have neither cited nor otherwise shown the existence of written policies or affirmative decisions by the City's officials upon which Plaintiffs base their claim, thus the Court finds that Plaintiffs premise their claim upon the City's unwritten customs.

Plaintiffs proffer two examples of customs which they contend are directly linked to the deprivation of their constitutional rights:  that the City allows an officer to cite an individual for public intoxication while riding in a private vehicle, and that the City does not require that an officer adequately determine whether an individual is intoxicated.  In support of their custom arguments Plaintiffs refer to a single instance wherein Chief Gibson had earlier arrested a passenger or public intoxication.  Plaintiffs also conclude that neither the City code nor Oklahoma statutes specifically make it a crime to be intoxicated while a passenger in a private vehicle.

Plaintiffs' custom arguments are ineffectual.  First, Plaintiffs have not demonstrated that the examples they proffer are truly customs in that they were sufficiently widespread within the municipality so as to have the force of law—a single prior example does not a custom make.  Second, Plaintiffs misunderstand Oklahoma law on public intoxication; it is a crime under Oklahoma law to be intoxicated while a passenger in a private vehicle that is on a public road.  37 Okla. Stat. § 8; <u>Findlay v. City of Tulsa</u>, 1977 OK CR 113, ¶¶ 15-17, 561 P.2d 980, 984; <u>Rothrock v. State</u>, 206 P.2d 1009, 1010 (Okla. Crim. App. 1949) ("The fact that defendant was in a private automobile would not be a defense  . . . where the evidence revealed that he was upon the public streets of the city . . . .  The argument that a person may be 'on' the street, but not 'in' the street is very technical, and does not appeal to the court.").  Third, the law does not require that the City's police officers first determine that an individual is intoxicated prior to an arrest—only probable cause that the individual is intoxicated is needed.  <u>See</u> <u>Jones</u>, 854 F.2d at 1210.  Fourth, and most importantly, Plaintiffs have failed to demonstrate that the proffered customs were the moving force behind the alleged constitutional violations.  Plaintiffs have not directly linked any custom of the City to Plaintiffs' claims of excessive force or wrongful arrest by showing how a particular City action or custom itself violates federal law or directs a police officer to do so.  Accordingly, the Court turns to Plaintiffs' failure-to-train argument.

A failure-to-train claim requires proof that the City made a deliberate or conscious choice to be indifferent to its citizens with whom its police officers come into contact.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998) (citation omitted).

Here, Plaintiffs argue that the City's training regarding public intoxication offenses is inadequate as City police officers do not have objective determinations to guide them in their intoxication assessment, and because the City does not provide training for its police officers on public intoxication offenses in general that is separate and independent from CLEET  Plaintiffs' claim fails as the record before the Court does not contain evidence tending to show that the City was deliberately indifferent.  The record is barren as to evidence demonstrating a pattern of tortious conduct by City police officers in the manner proposed by Plaintiffs.  The single example Plaintiffs give does not show a constitutional violation itself, much less a pattern of it.  Accordingly, the City did not have notice, constructive or otherwise, that its training program was constitutionally deficient or was substantially certain to result in a constitutional violation.

In addition, this claim does not fall within that "narrow range of circumstances" wherein a constitutional violation is a highly predictable or plainly obvious result of the City's failure to train.  See Brown, 520 U.S. at 409-10.  Plaintiffs neither offer evidence as

to why the CLEET training is insufficient nor explain what "objective determinations" are needed above and beyond the normal symptoms of intoxication which are a matter of common knowledge.  See Findlay, 1977 OK CR 113, ¶ 16, 561 P.2d at 984.  Plaintiffs fail to show how the City's use of the current training regimen on handling public intoxication offenses makes it highly predictable that constitutional violations will occur, why the City should have provided training beyond CLEET, or that its failure to do so presents an obvious potential for violating its inhabitants' constitutional rights.

Additionally, were the Court to assume that the CLEET training was inadequate, Plaintiffs have failed to link the inadequate training to either a deliberate choice on the City's part to not provide additional training, even though it recognized the need for it, or to their injuries.

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  It may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. . . . And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

City of Canton, 489 U.S. at 390-91 (citation omitted).  Even when the Court views all evidence in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor, plaintiffs have only shown that a City employee committed a constitutional

violation—not that the City failed to train its police officers properly or were deliberately indifferent in some manner. Therefore, summary judgment is appropriate.

### III.   Taylor's State Law-based Claim for Assault and Battery Against Officer Miller.

Lastly, Taylor alleges that Officer Miller committed the tort of assault and battery when he arrested her. Officer Miller contends that he used reasonable force during her arrest and that he acted within the scope of employment; therefore, he is immune from liability under the Oklahoma Governmental Tort Claims Act (Tort Claims Act), 51 Okla. Stat. § 151, *et seq*. Alternatively, Defendants request that the Court decline to exercise supplemental jurisdiction over Taylor's state claim.

Under the Tort Claims Act, "'[s]cope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." 51 Okla. Stat. § 152(9). Generally, an officer acts outside the scope of employment if he assaults and batters another individual unless the actions were "'fairly and naturally incident to the business,' and [were] "done while the servant was engaged upon the master's business . . . with a view to further the master's interest.'" Rodebush v. Oklahoma Nursing Homes, Ltd., 1993 OK 160, ¶ 12, 867 P.2d 1241, 1245 (1993) (quoting Russell-Locke Super-Service, Inc. v. Vaughn, 1935 OK 90, ¶ 18, 40 P.2d 1090, 1094). If Officer Miller acted with malice or in bad faith, his acts were not within the scope of employment. Pellegrino v. Oklahoma ex rel. Cameron Univ., 2003 OK 2, ¶ 4, 63 P.3d 535, 537. If Officer Miller acted within the scope of employment, he cannot be personally liable and should not have been named in the instant action.

<u>Carswell v. Oklahoma State Univ.</u>, 1999 OK 102, ¶ 17, 995 P.2d 1118, 1123; 51 Okla. Stat. § 163(C).

Here, as discussed above, genuine issues of material fact abound regarding Taylor's arrest and the reasonableness of Officer Miller's actions.  Reasonable minds could differ on whether Officer Miller's actions were without malice or bad faith given that Officer Miller specifically asked if the pickup belonged to Taylor, whether Taylor was in the pickup, and Taylor's allegations of his subsequent conduct which gave rise to this action.  Therefore, whether Officer Miller acted within or without the scope of employment is a question for the trier of fact and summary judgment is inappropriate.  <u>Nail v. City of Henryetta</u>, 1996 OK 12, ¶¶ 13-14, 911 P.2d 914, 918.   In addition, the Court declines Defendants' unsupported request to not exercise supplemental jurisdiction over Taylor's state claim, as the assault and battery claim clearly forms part of the same case and controversy.  28 U.S.C. § 1367(a).

**<u>CONCLUSION</u>**

Taylor's excessive force, wrongful arrest, and assault and battery claims against Officer Miller remain, as there are genuine issues of material fact in dispute which must be resolved by the trier of fact.  However, Defendants have demonstrated that Chief Gibson is entitled to qualified immunity on Hulnick's wrongful arrest claim and that the City is entitled to judgment as a matter of law on Plaintiffs' failure-to-train claim  The undisputed facts also demonstrate that summary judgment is appropriate on Taylor's wrongful arrest claim against Chief Gibson, as she cannot prove a necessary element of the claim.  Therefore, Defendants'

Motion for Summary Judgment [Dkt. No. 26] is **GRANTED IN PART** and **DENIED IN PART**, as delineated more fully herein.  Judgment will enter at the conclusion of this action.

IT IS SO ORDERED this 1st day of February, 2006.

ROBIN J. CAUTHRON
United States District Judge